1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9  Dina Galassini,                          )   No. CV-11-02097-PHX-JAT
                                            )
10             Plaintiff,                    )   **ORDER**
                                            )
11 vs.                                       )
                                            )
12                                           )
   Town of Fountain Hills, Arizona; Bevelyn )
13 Bender, in her official capacity as Town  )
   Clerk of Fountain Hills, Arizona; Andrew )
14 McGuire in his official capacity as Town  )
   Attorney of Fountain Hills, Arizona,     )
15                                           )
               Defendants.                   )
16                                           )
   _____    )
17

18         Upon consideration of Plaintiff's Motion for Preliminary Injunction (Doc. 4), and

19 upon hearing evidence on November 3, 2011, the Court finds:

20                              **FINDINGS OF FACT**

21         1.     Plaintiff Dina Galassini is a United States citizen and a citizen of Arizona,

22 residing in Fountain Hills, Arizona, in the County of Maricopa, within the jurisdiction of this

23 Court.

24         2.     Defendant Town of Fountain Hills, Arizona is a municipality and political

25 subdivision of the State of Arizona.

26         3.     Defendant Bevelyn Bender is the Town Clerk for the Town of Fountain Hills,

27 Arizona, an office created by ARIZ. REV. STAT. ANN. ("A.R.S.") § 9-237 (2011).  Defendant

28 Bender is sued in her official capacity as Maricopa County Recorder.

3.     Defendant Bender is the "filing officer" for the Town of Fountain Hills and is responsible for the filing of campaign finance reports and other documentation for town ballot issues. *See* A.R.S. § 16-902.01 (2011). Defendant Bender is responsible for notifying the town attorney if she has reasonable cause to believe that a person is violating the campaign finance laws. *See* A.R.S. § 16-924 (2011).

4.     Defendant Andrew McGuire is the Town Attorney for the Town of Fountain Hills, Arizona. Defendant McGuire is sued in his official capacity as Town Attorney.

5.     Defendant McGuire has authority to serve orders of violations on those who violate the campaign finance laws with respect to local ballot measures and to assess civil penalties for such violations. *See* A.R.S. § 16-924 (2011).

6.     The State of Arizona, through its Attorney General, is an intervenor in this action.

7.     Arizona Revised Statutes, Section 16.902.01(A) provides:

> Each political committee that intends to accept contributions or make expenditures of *more than five hundred dollars* shall file a statement of organization with the filing officer in the format prescribed by the filing officer before accepting contributions, making expenditures, distributing any campaign literature or circulating petitions. Each political committee that intends to accept contributions or make expenditures of *five hundred dollars or less* shall file a signed exemption statement in a form prescribed by the filing officer that states that intention before making any expenditures, accepting any contributions, distributing any campaign literature or circulating petitions. If a political committee that has filed a five hundred dollar threshold exemption statement receives contributions or makes expenditures of more than five hundred dollars, that political committee shall file a statement of organization with the filing officer in the format prescribed by the filing officer within five business days after exceeding the five hundred dollar limit.

A.R.S. § 16-902.01 (emphasis added).

8.     Arizona Revised Statutes, Section 16-901(19) defines "political committee" as follows:

> 'Political committee' means a candidate or any association or combination of persons that is organized, conducted or combined for the purpose of influencing the result of any election or to determine whether an individual will become a

candidate for election in this state or in any county, city, town, district or precinct in this state, that engages in political activity in behalf of or against a candidate for election or retention or in support of or opposition to an initiative, referendum or recall or any other measure or proposition and that applies for a serial number and circulates petitions and, in the case of a candidate for public office except those exempt pursuant to § 16-903, that receives contributions or makes expenditures in connection therewith, notwithstanding that the association or combination of persons may be part of a larger association, combination of persons or sponsoring organization not primarily organized, conducted or combined for the purpose of influencing the result of any election in this state or in any county, city, town or precinct in this state.

A.R.S. § 16-901(19).

9.    Arizona Revised Statutes, Section 16-901(8) defines "expenditures" as follows:

'Expenditures' includes any purchase, payment, distribution, loan, advance, deposit or gift of money or anything of value made by a person for the purpose of influencing an election in this state including supporting or opposing the recall of a public officer or supporting or opposing the circulation of a petition for a ballot measure, question or proposition or the recall of a public officer and a contract, promise or agreement to make an expenditure resulting in an extension of credit and the value of any in-kind contribution received . . .

A.R.S. § 16-901(8).

10.    Arizona Revised Statutes, Section 16-901(3) defines "contribution" as follows:

'Contribution' means any gift, subscription, loan, advance or deposit of money or anything of value made for the purpose of influencing an election including supporting or opposing the recall of a public officer or supporting or opposing the circulation of a petition for a ballot measure, question or proposition or recall of a public officer . . .

A.R.S. § 16-901(3).

11.    Title 16 of the Arizona Revised Statutes contains the following requirements for political committees:

A.  "Each political committee must have a chairman and treasurer and those positions may not be held by the same individual."  A.R.S. § 16-902(A).

B.    "Before a political committee accepts a contribution or makes an expenditure it shall designate . . . its campaign depository" and "shall notify the filing officer

of the designation . . . "either at the time of filing the statement of organization pursuant to 16-902.01 or within five business days after opening an account."   A.R.S. § 16-902(C).

C.   Committees that have filed a five hundred dollar threshold exemption statement must, among other things, 1) maintain a record of all contributions received and expenditures made by the committee; 2) file a termination statement in conformance with § 16-914 within ninety days of the election cycle, or if it fails to file a termination statement, be fined $100; 3) preserve all records and finance reports for three years.  A.R.S. § 16-904.

D.   "A political committee that makes an expenditure in connection with any literature or advertisement to support or oppose a ballot proposition shall disclose and . . . shall include on the literature or advertisement the words 'paid for by,' followed by the name of the committee that appears on its statement of organization or five hundred dollar threshold exemption statement . . ."  A.R.S. § 16-912.01 (A).  "For the purposes of this section, 'advertisement' means general public advertising through the print and electronic media, signs, billboards and direct mail."  A.R.S. § 16-912.01 (J).

12.   Plaintiff Dina Galassini intended to hold two protests,[1] opposing the Fountain Hills Special Bond Election on November 8, 2011.

13.   Plaintiff Dina Galassini sent an email to twenty-three residents of Fountain Hills, inviting them to join her at the two protests and to bring signs protesting the bonds.[2]

14.   Before the planned dates of her protests, Plaintiff received a letter from Defendant Bender, indicating that she received a copy of the email Plaintiff sent to the twenty-three residents.

15.   In the letter, Defendant Bender informed Plaintiff "[a]lthough an individual

---

[1]  The protests were originally planned for October 19, 2010 from 4:00 p.m. to 6:00 p.m. at the corner of Palisades and Palomino in Fountain Hills, Arizona and October 22, 2010 from 12:00 p.m. to 3:00 p.m. at the corner of Saguaro and Avenue of the Fountains in Fountain Hills, Arizona.

[2]  Plaintiff suggested that the signs say: "Bonds are BONDAGE," "Keep Property Taxes Low," "No to the Ball and Chain Bond," "Vote NO on the Bond," and "Vote No on Nov 8."

1    acting alone is not a political committee under Arizona law and need not file a statement of

2    organization, if any additional person or persons join the effort (as defined in A.R.S. § 16-

3    901(19)-see below) begun by an individual, the association of persons has become a

4    'political committee' under Arizona law, and must file a statement of organization before

5    accepting contributions, making expenditures, distributing literature or circulating petitions."

6         16.   The letter further informed Plaintiff "[i]n order to comply with the law a

7    Statement of Organization must be filed in the office of the Town Clerk prior to **any**

8    electioneering taking place.  I would strongly encourage you to cease any campaign related

9    activities until the requirements of the law have been met."  (emphasis in original).

10                          **CONCLUSIONS OF LAW**

11   *Standing and Ripeness*

12        The Fountain Hills Defendants argue that Plaintiff's claim is premature.  To satisfy

13   Article III's case or controversy requirement, Plaintiff must establish that she has standing

14   to sue.  To demonstrate standing, Plaintiff must show "(1) an injury-in-fact, (2) causation,

15   and (3) a likelihood that the injury will be redressed by a decision in the plaintiff's favor."

16   *Human Life of Washington v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010) (internal

17   quotation omitted).  As the Court cannot issue advisory opinions or decide hypothetical

18   cases, the claim must also be ripe for review.  *Id.* (internal citation omitted).  When a plaintiff

19   has made a pre-enforcement constitutional challenge and has not yet been penalized for

20   violating the challenged statute, "neither the mere existence of a proscriptive statute nor a

21   generalized threat of prosecution satisfies that 'case or controversy' requirement," but "when

22   a challenged statute risks chilling the exercise of First Amendment rights, the Supreme Court

23   has dispensed with rigid standing requirements and recognized 'self-censorship' as "a harm

24   that can be realized even without an actual prosecution."  *Id.* at 1000 (internal quotations and

25   citations omitted).  "In an effort to avoid the chilling effect of sweeping restrictions, the

26   Supreme Court has endorsed what might be called a 'hold your tongue and challenge now'

27   approach rather than requiring litigants to speak first and take their chances with the

28   consequences."  *Lopez v. Candaele*,   630 F.3d 775, 785 -786 (9th Cir. 2010) (internal

1    quotation omitted).  In such pre-enforcement cases, courts must consider three factors: (1)

2    "whether pre-enforcement plaintiffs have failed to show a reasonable likelihood that the

3    government will enforce the challenged law against them" (2) whether plaintiffs have

4    established, with some concrete detail that they intend to violate the challenged law; and (3)

5    "whether the challenged law is inapplicable to plaintiffs, either by its terms or as interpreted

6    by the government." *Id.* at 786. If the government disavows an intent to enforce a law

7    against a plaintiff, such disavowal "must be more than a mere litigation position."

8        With regard to the first factor, the Court finds that Defendant Bender's letter to

9    Plaintiff is strong evidence that Plaintiff faces a credible threat of adverse action by the State.

10   In *Culinary Workers v. Del Papa*, the Ninth Circuit Court of Appeals found injury in fact

11   where the attorney general wrote a letter to the union which quoted the statute in full and

12   threatened to refer the prosecution to local criminal authorities."  200 F.3d 614 (9th Cir.

13   1999).  Defendant Bender's letter to Plaintiff similarly quoted the statute and informed her

14   that "one or more persons working to impact the results of an election are considered to be

15   a Political Action Committee (PAC) subject to all the requirements associated with a PAC."

16   Although Defendant Bender's letter did not threaten to refer the matter to the City Attorney,

17   it did "strongly encourage" Plaintiff to "cease any campaign related activities until the

18   requirements of the law have been met."  During the Preliminary Injunction hearing before

19   this Court, Plaintiff testified that as soon as she received this letter, she decided to call off her

20   planned protests because "I had no idea I'd be violating the law" and "I didn't know if I'd

21   be fined or jailed or what was going to happen."  The Court finds that this warning to

22   Plaintiff was reasonably interpreted by Plaintiff as a credible threat that, if she were to

23   continue with her proposed protests, she would be in violation of the law, unless she first

24   registered as a political action committee. *See id.* ("We also reject the contention that the

25   attorney general's letter was not a 'genuine threat' because it failed to 'chill' the union's

26   exercise of First Amendment rights. There is no dispute that the union stopped distributing

27   the contested handbill as soon as it received the attorney general's letter. This is substantially

28   more than a subjective chilling effect.").  Accordingly, Plaintiff has adequately established

1   the first factor.

2       With regard to the second factor, both in her email and through testimony during the
3   Preliminary Injunction hearing, Plaintiff established, in concrete detail, the nature of the
4   activities she planned to engage in.  During the Preliminary Injunction hearing, two witnesses
5   testified that they planned to go to Plaintiff's protests, as proposed in her email.  While there
6   is some disagreement among the State of Arizona and the Fountain Hills Defendants as to
7   whether those activities would actually meet the definition of "political committee," the
8   description of a political committee urged by the Town Clerk, which the State of Arizona
9   seems to concede is correct, suggests that if Plaintiff were to engage in her protests, she
10   would be violating the law, unless she first registered her group as a political committee.  The
11   Court finds that there is at least a strong argument that Plaintiff's proposed activities would
12   violate the challenged law.  Such a strong argument supports Plaintiff's decision to self-
13   censor, rather than risk violating the challenged law.  Accordingly, Plaintiff has met the
14   second element.

15       With regard to the third factor, as the Court has previously pointed out, the State of
16   Arizona and the Fountain Hills Defendants seemingly disagree as to the interpretation of the
17   law.  Because Defendants do not agree as to whether the law applies to Plaintiffs' actions,
18   it is difficult for the Court to engage in a traditional analysis of this factor.  However, it
19   seems to be undisputed is that, if the Court finds that the requirements of the statutory
20   scheme contained in Title 16 of the Arizona Revised Statutes do apply to Plaintiff, they
21   would be enforced against her.  There has certainly been no suggestion to the Court that these
22   laws have not been enforced in the past or that there is a plan to not enforce them in the
23   future.  As pointed out above, based on Defendant Bender's letter to her and her proposed
24   activities, Plaintiff has established a strong possibility that her planned protests would violate
25   the statutory scheme.  Because this has reasonably caused Plaintiff to self-censor, the Court
26   finds that Plaintiff has established the third factor.

27       For the foregoing reasons, the Court finds that Plaintiff has satisfied Article III's case
28   or controversy requirement.

*Jurisdiction and Venue*

The Court has personal jurisdiction over the parties to this action. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a) and 42 U.S.C. §1983. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

*Preliminary Injunction*

To be entitled to temporary restraining order, Plaintiff must show:

[1] he is likely to succeed on the merits,

[2] he is likely to suffer irreparable harm in the absence of preliminary relief,

[3] the balance of equities tips in his favor, and

[4] an injunction is in the public interest.

*Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24-25 (2008). Even if Plaintiff has not demonstrated that he is likely to succeed on the merits, if plaintiff establishes factors [3] and [4], a preliminary injunction is also appropriate when Plaintiff has demonstrated "serious questions going to the merits" and the "hardship balance tips sharply toward plaintiff." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (2011).

"Courts asked to issue preliminary injunction based on First Amendment grounds face an inherent tension: the moving party bears the burden of showing likely success on the merits-a high burden if the injunction changes the status quo before trial-and yet within that merits determination the government bears the burden of justifying its speech-restrictive law." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011) "[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point, the burden shifts the government to justify the restriction." *Id.* at 1116. "[E]xacting scrutiny applies in the campaign finance disclosure context" and the Court must "examine whether the law's requirements are substantially related to a sufficiently important government interest." *Human Life of Washington v. Randolph*, 507 F.3d 1172, 1189 (9th Cir. 2007).

In this case, the Court finds that Plaintiff has established serious questions going to

the merits and that the hardship balance tips sharply toward Plaintiff.

In her Complaint, Plaintiff alleges that A.R.S. § 16-901(19) is an unconstitutional burden on her First Amendment rights to freedom of speech and freedom of association. Plaintiff alleges that, both on their face and as applied to Plaintiff, the registration, exemption, reporting, and disclosure requirements for political committees in the Arizona Revised Statutes impose a prior restraint on political speech and association and chill the rights to free speech and association. Plaintiff further alleges that these registration, exemption, reporting, and disclosure requirements are vague and overbroad violations of the First and Fourteenth Amendments of the United States Constitution. Following the Preliminary Injunction hearing in this matter, the Court finds that Plaintiff has established serious questions as to the constitutionality of the statutes at issue. Further, at this stage, Defendants have not met their burden of establishing that the statutes are sufficiently related to an important government interest as they apply to Plaintiff.

### *Likelihood of Irreparable Harm, Balance of the Equities, and the Public Interest*

Factors two, three, and four of the *Winter* test–irreparable harm, balance of equities, and public interest–are met under these facts. "The loss of First Amendment . . . freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *S.O.C., Inc. v. County of Clark*, 152 F.3d 1136, 1148 (9th Cir. 1998). Often, in cases involving "First Amendment rights . . . which must be carefully guarded against infringement . . . injunctive relief is clearly appropriate." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The "balancing of equities that is undertaken in a conventional equity case is out of place in dealing with rights so important as the modern Supreme Court considers the rights of expression to be." *Shondel v. McDermott*, 775 F.2d 859, 869 (7th Cir. 1985). Finally, courts "have consistently recognized the significant public interest in upholding First Amendment principles." *Sammartano v. First Judicial District Court*, 303 F.3d 959, 974 (9th Cir. 2002). It "is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Michigan Liquor Control Comm.*, 23 F.3d 1071, 1079 (6th Cir. 1994); *see Thalheimer v. City of San Diego*, 645 F.3d 1109, 1129 (9th Cir. 2011) ("the public interest

1  in upholding free speech and association rights outweighed the interest in continued

2  enforcement of campaign finance provisions.").  Accordingly, because there are serious

3  questions related to the merits of this case and balance of equities tips sharply toward

4  Plaintiff, the Court finds that Plaintiff is entitled to a preliminary injunction.

5  *Bond Requirement*

6      Federal Rule of Civil Procedure 65(c) provides that "[n]o restraining order or

7  preliminary injunction shall issue except upon the giving of security by the applicant, in such

8  sum as the court deems proper, for the payment of such costs and damages as may be

9  incurred or suffered by any party who is found to have been wrongfully enjoined or

10  restrained."  Fed.R.Civ.P. 65(c).  Despite this mandatory language, "Rule 65(c) invests the

11  district court with discretion as to the amount of security required, *if any*."  *Johnson v.*

12  *Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation omitted).  In particular,

13  the district court may dispense with the filing of a bond when it concludes there is no realistic

14  likelihood of harm to the defendant from enjoining his or her conduct.  *Id.*  Even more on

15  point, courts have waived the bond requirement in free speech cases involving no harm to

16  the defendant. *Baca v. Moreno Valley Unified School Dist.*, 936 F. Supp. 719, 738 (C.D. Cal.

17  1996) (waiving the bond requirement because "to require a bond would have a negative

18  impact on plaintiff's constitutional rights, as well as the constitutional rights of other

19  members of the public affected by the policy").

20      In the present case, Defendants have not requested a bond, nor have they submitted

21  any evidence regarding their likely damages.  It is also difficult to envision how Defendants

22  would incur compensable costs or damages.  Thus, the Court finds that this preliminary

23  injunction will not likely result in any damages to Defendants and will waive the bond

24  requirement.

25      Based on the foregoing findings and conclusions,

26      **IT IS HEREBY ORDERED THAT:**

27      1)      Plaintiff's Motion for Preliminary Injunction (Doc. 4) is GRANTED.

28      2)      Defendants, along with their officers, agents, and employees, are hereby

enjoined from requiring Plaintiff and others associating with her to register as a political committee and/or file an exemption form under A.R.S. §§ 16-901(19) and 16-902.01(A), and to comply with the requirements for political committees contained in A.R.S. §§ 16-902, -904, -912.01(A) & (J), and -924, so that Plaintiff may speak and associate with others and hold her protests between now and November 8, 2011.

     3)    This Order will go into effect immediately and expire after the close of the November 8, 2011 Fountain Hills Special Election.

     5)    For good cause shown, the Court exercises its discretion and waives the requirement of a security bond accompanying this preliminary injunction Order.

     DATED this 3rd day of November, 2011.

James A. Teilborg
United States District Judge