**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dina Galassini, | No. CV-11-02097-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Town of Fountain Hills, et al., | |
| Defendants. | |

Pending before the Court is Intervenor-Defendant State of Arizona's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 147). The Court now rules on the motion.

**I.   Background**

The Court has previously recounted the facts of this case in detail, *see* (Doc. 106 at 1-17), and will state only those essential to the pending motion. This case arises from Plaintiff's opposition to a bond proposal on the November 2011 ballot of Town of Fountain Hills, Arizona ("Fountain Hills"). (Doc. 106 at 2). Plaintiff sent an e-mail to friends and neighbors in an attempt to organize a rally opposing the bond proposal. (*Id.*) After this e-mail was forwarded to Fountain Hills' officials, the Town Clerk sent a letter to Plaintiff stating that Plaintiff's planned rally would violate the state campaign-finance laws. (*Id.* at 5-7). In response, Plaintiff cancelled her rally. (*Id.* at 7).

Plaintiff initially filed a complaint against Fountain Hills, the Town Clerk of Fountain Hills, and the Town Attorney of Fountain Hills for violations of her First

Amendment rights to freedom of speech and freedom of association.[1] (Doc. 1). Specifically, Plaintiff alleged that Arizona's campaign finance laws were unconstitutional and Fountain Hills had enforced these laws against her in violation of her First Amendment rights. (Doc. 1 at 5-6, 17).

The next day, the State of Arizona (the "State") moved to intervene as a defendant "to defend the constitutionality of state law" under its "unconditional right to intervene" pursuant to 28 U.S.C. § 2403. (Doc. 13 at 1-2). The Court granted the State's motion to intervene. (Doc. 18). Following a preliminary injunction hearing, the Court issued a preliminary injunction and Plaintiff held her protest rally prior to the bond proposal election. (Doc. 106 at 7-8).

Subsequent to the election and the expiration of the preliminary injunction, Plaintiff amended her complaint. (Doc. 65). Plaintiff claims in her amended complaint that Arizona's campaign finance laws are unconstitutional burdens on free speech, are overbroad, and impermissibly vague. (Doc. 65 at 18-22). Plaintiff asks in her amended complaint for a judgment declaring "that the registration, exemption, reporting, and disclosure requirements for political committees contained in [A.R.S.] § 16-901 *et seq.* are unconstitutional on their face and as applied to the Plaintiff and others similarly situated" as well as, *inter alia*, injunctive relief "against the Defendants prohibiting the enforcement of these regulations, laws, rules, and policies." (*Id.* at 22-23).

Plaintiff also alleged in her amended complaint that she "wishes to associate with others to speak about ballot issues in the future" but the campaign-finance laws "will continue to make her[] avoid speaking out in a manner that would trigger" the laws. (*Id.* at 18). Plaintiff later testified at her deposition that she wishes to be politically active with respect to future ballot issues, including associating with others and spending more than $250 as a group on political activities. (Doc. 82-4 at 15-16).

The State answered Plaintiff's amended complaint, filed responses to Plaintiff's

---

[1] The parties later stipulated to dismissal of the Town Clerk and Town Attorney. (Doc. 61; Doc. 62).

1 motions, participated in discovery, and moved for summary judgment. The State, Fountain Hills, and Plaintiff each filed summary judgment motions. The State defended the constitutionality of the campaign finance laws and asked the Court to enter judgment in the State's favor. (Doc. 83). Fountain Hills did not opine on the constitutionality issue but argued that it could not be liable under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) because it did not have a policy of enforcing statutes without regard to their constitutionality. (Doc. 84).

In its ruling on the motions for summary judgment, the Court held that the definition of "political committee" in A.R.S. § 16-901(19) was vague and overbroad in violation of the First Amendment. (Doc. 106 at 33, 41). The Court then considered but denied Fountain Hills' motion for summary judgment, finding a disputed issue of material fact existed as to whether Fountain Hills had a policy of applying state statutes regardless of their constitutionality. (*Id.* at 47). Accordingly, the Court denied Fountain Hills' motion for summary judgment, denied the State's motion for summary judgment, and granted in part and denied in part Plaintiff's motion for summary judgment. (*Id.* at 52-53). The Court's Order did not enter any final judgment on any claims, however.

The State asserted in the parties' proposed final pretrial order that no issues existed between it and Plaintiff for trial and "[t]he State's interest in this litigation is solely in the constitutionality of the statute, which the Court has already decided." (Doc. 134 at 2 n.1). Plaintiff and Fountain Hills then settled their claims, and the Court entered a consent judgment (the "Consent Judgment") in which the Court declared Arizona's campaign finance laws to be unconstitutionally vague and overbroad as set forth in the Court's decision on the parties' summary judgment motions. (Doc. 138 at 3). The consent judgment also contained Fountain Hills' admission that its officials did not make an independent determination of the constitutionality of the campaign finance laws prior to contacting Plaintiff. (*Id.* at 3-4). The consent judgment further provided that it was a final judgment pursuant to Federal Rule of Civil Procedure ("Rule") 54(b). (*Id.* at 5).

The State now moves to dismiss this case for lack of subject-matter jurisdiction.

(Doc. 147). Plaintiff asks the Court to enter declaratory and permanent injunctive relief against the State. (Doc. 148-1 at 30-32).

## II. Legal Standard

Subject-matter jurisdiction "concerns the courts' statutory or constitutional power to adjudicate cases." *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 (9th Cir. 2012) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)) (internal quotation marks and emphasis omitted). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Subject-matter jurisdiction derives, in part, from Article III of the Constitution, which limits the judicial power to the adjudication of cases or controversies. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 137 (2007). This case-or-controversy limitation is reflected in the justiciability doctrines of standing, mootness, and ripeness. *See Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 617 (9th Cir. 1999). A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). However, dismissing a case on grounds of mootness is "justified only if it [is] absolutely clear that the litigant no longer [has] any need of the judicial protection that it sought." *Jacobus v. Alaska*, 338 F.3d 1095, 1102 (9th Cir. 2003) (quoting *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 224 (2000)).

## III. Analysis

### A. Mootness/Standing

The State argues that the Court lacks subject-matter jurisdiction to enter any further judgments in this case because Plaintiff's settlement with Fountain Hills resolved all outstanding claims. (Doc. 147 at 2). According to the State, Plaintiff's protests concerning the November 2011 bond proposal were the sole political activity at issue in this litigation. (*Id.* at 4). Thus, the State claims, there never existed a case or controversy between Plaintiff and the State and the Consent Judgment between Plaintiff and Fountain

Hills has mooted this case. (*Id.*) In other words, the State argues that Plaintiff now lacks standing to pursue relief from the State. *See* (*id.* at 5) ("In finding that Plaintiff had standing, the Court relied solely on the allegations that Plaintiff made against the Town, not the State.").

The State principally relies upon *Blair v. Shanahan*, 38 F.3d 1514 (9th Cir. 1994) to argue that the Consent Judgment between Plaintiff and Fountain Hills stripped the Court of subject-matter jurisdiction. (Doc. 147 at 3-4). Blair, who had been arrested multiple times for alleged violations of a state anti-panhandling law, sued the City of San Francisco for damages pursuant to 42 U.S.C. § 1983 as well as a declaration that the state law was unconstitutional. *Blair*, 38 F.3d at 1517. However, at the time of filing the lawsuit, Blair was gainfully employed and no longer panhandled. *Id.* Blair and San Francisco subsequently entered into a consent judgment in which the Court entered judgment in favor of Blair on his claims for damages and declaratory relief. (*Id.* at 1517-18). San Francisco believed that this consent judgment had preserved its right to appeal the declaratory judgment; upon realizing that this might not be the case, it moved to modify the judgment. (*Id.* at 1518). The trial court denied San Francisco's motion, and San Francisco appealed. (*Id.*)

The Ninth Circuit Court of Appeals ("Ninth Circuit") concluded that it lacked subject-matter jurisdiction to consider the appeal. *Blair*, 38 F.3d at 1520. The court first stated the Article III requirement that a plaintiff have a "legally cognizable interest in the outcome of the litigation," known as the "personal stake requirement." *Id.* at 1519 (quotation marks and citation omitted). The court held that Blair had no continuing personal stake in the outcome of his case because he no longer wished to panhandle and thus had no continuing "legal interest in the enforceability of the statute." *Id.* Because there was no other basis for finding that Blair had a personal stake in the declaratory judgment, the Ninth Circuit held that the case was moot and dismissed the appeal. *Id.* at 1520.

The State misreads *Blair* in arguing that Plaintiff's case is moot merely because

1  the claim for damages has been settled. *See* (Doc. 147 at 3). The Ninth Circuit's
2  reasoning in *Blair* did not rely upon the consent judgment entered with respect to the
3  damages claim; instead, the court's holding turned on Blair's failure to show a continuing
4  interest in the enforceability of the challenged statute. *See Blair*, 38 F.3d at 1519-20.
5  Although the Ninth Circuit discussed the satisfaction of Blair's damages claim as having
6  rendered the case moot, it did so only because the continued presence of a damages claim
7  would have preserved justiciability. *See id.* at 1520-21. The Ninth Circuit found the case
8  to be moot only because both the damages claim had been satisfied *and* Blair lacked a
9  continuing legal interest in the enforceability of the statute. *See id.* at 1519-20. Thus, to
10 the extent the State relies upon *Blair* for the proposition that the settlement of Plaintiff's
11 damages claim necessarily renders the case moot, the State's argument fails.

12 Under *Blair*, the proper inquiry is whether Plaintiff has a continuing legal interest
13 in the enforceability of the campaign-finance laws. The State asserts that although the
14 Court previously found Plaintiff to have an interest in protesting the November 2011
15 bond proposal, Plaintiff has no such future plans. In its ruling on the motions for
16 summary judgment, the Court found:

> Here, Ms. Galassini is politically active and wants to be involved in rallies and protests where she cares about the issues at stake. . . . Ms. Galassini testified that she would get involved with and speak about future ballot issues and would associate with others to do so if she did not have to worry about Arizona's campaign finance laws being applied to her. Thus, Ms. Galassini has articulated a concrete plan to associate with others and engage in future protests like her protest of the November 8th bond election.
>
> Ms. Galassini credibly asserts that she will refrain from such activities if there is a chance she will be penalized for unintentionally violating Arizona's campaign finance scheme. . . .
>
> . . . Based on her experience, Ms. Galassini has reason to believe that, should she ever hold a protest in the future and her fellow[] protestors, either individually, or in combination, spend in excess of $250 unbeknownst to her, either because she does not know about the expenditures or because she does not understand what constitutes an "expenditure," the statute will be enforced against her.

1  (Doc. 106 at 29-30). Although the Court made these findings in the context of the November 2011 bond proposal, because the election had already occurred at the time of the Court's order and the Court found Plaintiff articulated a "concrete plan to associate with others and engage in future protests," Plaintiff has established her continuing legal interest in the enforceability of the campaign-finance laws. Plaintiff is unwilling to continue her political activism with respect to other, non-municipal elections (such as county or state elections) if the campaign-finance laws remain enforceable because she fears they will be applied to her.

To the extent that Plaintiff's political activism was directed at the November 2011 bond proposal, the State is correct that the entry of the Consent Judgment eliminates these activities as a basis for Plaintiff having standing.[2] *See* (Doc. 147 at 6-7). But the State is incorrect in arguing that Plaintiff lacks standing because no state entity or official has threatened to enforce the campaign-finance laws against her. *See* (*id.* at 7). The Court has found that Plaintiff intends to engage in future political activism beyond the November 2011 election. Thus, the continued existence of the campaign-finance laws chills Plaintiff's speech in violation of the First Amendment, and Plaintiff has a continued legal interest in the enforceability of the campaign-finance laws even if she has not demonstrated a specific threat of enforcement by a state official.

Although Plaintiff has standing, it does not automatically follow that the State is a party against which the Court can enter judgment. The State intervened pursuant to 28 U.S.C. § 2403(b), which provides:

> In any action, suit, or proceeding in a Court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall . . . permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of

---

[2] The State errs in asserting that Plaintiff's amended complaint "states that the only political activity in which Plaintiff attempted to engage in, or planned to engage in in the future, was with respect to municipal bonds within the Town of Fountain Hills." (Doc. 147 at 4). Plaintiff alleged that she wishes to engage in other political activity in the future. *See* (Doc. 65 ¶ 67).

- 7 -

>   constitutionality. The State shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.

28 U.S.C. § 2403(b). The State argues that its intervention in this case was thus limited purely to "arguing the constitutionality of the challenged statutes as applied to the Plaintiff by the Town." (Doc. 147 at 8). The State cites *Blair* for the proposition that a State may not participate in a proceeding where the constitutionality of a state statute is not at issue. (*Id.*) (citing *Blair*, 38 F.3d at 1522).

In *Blair*, the Ninth Circuit held that the State of California did not have standing to participate in San Francisco's Rule 60(b) motion because the issue of vacating the consent judgment between Blair and San Francisco did not relate to "facts and law relating to the question of [the] constitutionality" of the statute in question. *Blair*, 38 F.3d at 1522. The Court noted that "[t]hough we understand the State's argument that it had an interest in vacating the consent judgment so that it could obtain review of the constitutionality of section 647(c), 28 U.S.C. § 2403(b) does not allow a State standing to participate in a motion where questions of constitutionality are not among the issues argued." *Id.* The general rule of *Blair* is consistent with the Supreme Court's decision in *Maine v. Taylor*, 477 U.S. 131 (1986), in which the court held that the State of Maine, which had intervened in the district court under 28 U.S.C. § 2403(b), had standing to defend the constitutionality of its statute despite being the only appellant before the court. 477 U.S. at 136.

Here, Plaintiff is seeking relief based upon the Court's prior determination that the campaign-finance laws are unconstitutional. The State defended the laws' constitutionality at the summary judgment stage and lost. The Court has already granted in part Plaintiff's motion for summary judgment and denied the State's motion for summary judgment. (Doc. 106 at 52). Any declaratory or injunctive relief against the State is directly connected to this prior ruling on the merits of Plaintiff's claims, and relates to the constitutionality of the campaign-finance laws. Accordingly, the State is a

proper party against whom relief may be granted.

B.     **Appropriate Relief**

Plaintiff asks the Court to enter judgment in her favor and against the State for declaratory and injunctive relief because both types of relief are necessary to remedy her injury. (Doc. 148 at 2). In disputing the proper scope of relief, the State relies primarily upon its arguments concerning subject-matter jurisdiction. To the extent the State comments on the specifics of Plaintiff's requested relief, it challenges her request for an injunction. *See* (Doc. 152 at 8-12).

1.     **Declaratory Relief**

For the reasons provided in the Court's discussion concerning standing and because the Court previously concluded that the campaign-finance laws are unconstitutional, entry of a declaratory judgment against the State is appropriate. The Court will declare the campaign-finance laws unconstitutional as specified in the Court's prior Order. *See* (Doc. 106 at 41, 50).

2.     **Injunctive Relief**

The Court previously ruled that "injunctive relief is appropriate in this case" and "it would not be appropriate to limit an injunction solely to certain groups of people." (Doc. 106 at 51). However, the Court made these statements at the summary judgment stage while Fountain Hills was an active party in this litigation. At that time, Fountain Hills' history of enforcing the campaign-finance laws, combined with Plaintiff's deposition testimony that she wished to remain politically active, *see* (Doc. 82-4 at 15-16), indicated to the Court that there was a significant threat to Plaintiff that Fountain Hills would continue to enforce the same unconstitutional campaign-finance laws.

The issuance of a permanent injunction requires a showing of a likelihood of irreparable harm. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Haw. Pac. Health v. Takamine*, 2013 WL 1858554, at *3 (D. Haw. May 1, 2013). Any threat of identifiable irreparable harm to Plaintiff disappeared when, subsequent to the Court's ruling on the motions for summary judgment, Plaintiff settled with Fountain

Hills and Fountain Hills agreed to not enforce the unconstitutional campaign-finance laws in the future. *See* (Doc. 138).

There is no evidence in the present record that the State is likely to enforce the unconstitutional campaign-finance laws against Plaintiff subsequent to the Court's entry of a declaratory judgment against the State. Although Plaintiff has stated that she intends to remain politically active, she has not identified any specific future activity where the State has threatened to enforce the campaign-finance laws and chill her right to free speech. Therefore, because Plaintiff has not shown a likelihood of irreparable harm, she has failed to establish her entitlement to a permanent injunction. *See Poe v. Gerstein*, 417 U.S. 281, 281-82 (1974) (finding injunctive relief unnecessary where there was no evidence that the State would not respect the declaratory judgment).

However, if in the future Plaintiff is able to show that the State is threatening to enforce or is enforcing the unconstitutional definition of "political committee" against her, she may apply to the Court for an injunction.

## IV. Conclusion

For the foregoing reasons,

/
/
/
/
/
/
/
/
/
/
/
/

**IT IS DECLARED** that the definition of "political committee" in A.R.S. § 16-901(19) is vague, overbroad, and consequently unconstitutional in violation of the First Amendment.

**IT IS ORDERED** that the Clerk of the Court shall enter judgment in favor of Plaintiff and against the State on Plaintiff's claim for declaratory judgment.

**IT IS FURTHER ORDERED** that to the extent the State's Response to Plaintiff's Notice of Seeking Injunction as Remedy (Doc. 113) is a motion for reconsideration of the Court's ruling at Doc. 106, it is denied.

**IT IS FURTHER ORDERED** denying the State's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 147).

Dated this 4th day of December, 2014.

_____
James A. Teilborg
Senior United States District Judge